UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| PRIEOR FRANKLIN CHILDERS,<br><br>Plaintiff,<br><br>vs.<br><br>NELINDA RHODE, in her individual capacity; TAYLOR ROBERTS, in her individual and official capacity; and MICHAEL MATTSON, in his official capacity,<br><br>Defendants. | 4:22-CV-04088-CCT<br><br>ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT |
| PRIEOR FRANKLIN CHILDERS,<br><br>Plaintiff,<br><br>vs.<br><br>ALICIA LUTHER, in her official capacity; TAYLOR ROBERTS, in her official capacity; BRENT ALBERS, in his official capacity; MICHAEL MATTSON, in his individual and official capacity; UNKNOWN SFPD OFFICER #1, in their individual and official capacity; and UNKNOWN SFPD OFFICER #2, in their individual and official capacity,<br><br>Defendants. | 4:22-CV-04095-CCT |

Plaintiff, Prieor Franklin Childers, who was a detainee at the Minnehaha County Jail at the start of these lawsuits, filed two pro se civil rights lawsuits under 42 U.S.C. § 1983. Docket 1; 4:22-CV-04095-CCT, Docket 1. The court

1

granted defendants' motion to consolidate the cases.[1] Docket 27; 4:22-CV-04095-CCT, Docket 23. After the cases were consolidated, defendants filed two motions for summary judgment.[2] Dockets 37, 47.

In his complaints, Childers asserted an excessive force claim in violation of his Fourth Amendment rights and due process claims in violation of his Fourteenth Amendment rights.[3] Docket 1; 4:22-CV-04095-CCT, Docket 1. His claim for excessive force against Unknown PD Officers SFPD #1[4] and #2 in their individual capacities for money damages and official capacities for injunctive relief survived screening. 4:22-CV-04095-CCT, Docket 6 at 10-11. His due process claim for deliberate indifference to his hernia against Warden Michael Mattson in his individual capacity for money damages as well as against Mattson, Taylor Roberts, Alicia Luther, and Sergeant Brent Albers in

---

[1] Case file 4:22-CV-04088 became the lead case. This court will refer to the docket in 4:22-CV-04088-CCT by citing to the assigned docket number. The court will refer to the docket in 4:22-CV-04095-CCT by "4:22-CV-04095-CCT" before the assigned docket number.

[2] This order addresses the two motions for summary judgment that have been filed. Dockets 37, 47. Accordingly, this order refers to the parties moving for summary judgment collectively as defendants.

[3] Childers also alleged claims for deliberate indifference to his serious medical needs. 4:22-CV-04088-CCT, Docket 1 at 4. Because Childers was a pretrial detainee, this court held that his claims fell under the Fourteenth Amendment, not the Eighth Amendment. 4:22-CV-04088-CCT, Docket 6 at 7-8; 4:22-CV-04095, Docket 6 at 11-12; *see also Bull v. City of Rapid City*, 5:22-CV-5029-CBK, 2022 WL 1554883 (D.S.D. May 17, 2022).

[4] Childers did not identify any of the unnamed defendants named in his complaint, and his time for doing so has expired. *See* 4:22-CV-04095-CCT, Dockets 11, 14, 15. Defendant Unknown PD Officer SFPD #1 has become known as Jeff VanGerpen; however, this occurred well after the deadline stated in the court's Notice of Rule 4(m) order. Accordingly, for the purpose of this order, the court will continue to refer to Defendant Jeff VanGerpen as "Unknown PD Officer SFPD #1."

their official capacities for injunctive relief survived screening. *Id.* at 16. Finally, his due process claim for deliberate indifference to his Hepatitis C diagnosis against Mattson, Roberts, and Nelinda Rhode in their official capacities for money damages and for injunctive relief as well as against Roberts in her individual capacity for money damages survived screening.[5] Docket 6 at 12-13.

Defendants Nelinda Rhode, Taylor Roberts, Alicia Luther, Warden Michael Mattson, Sergeant Brent Albers, and Unknown PD Officers SFPD #1 and #2[6] move for summary judgement. Dockets 37, 47.

## FACTUAL BACKGROUND

Because defendants move for summary judgment, the court recites the facts in the light most favorable to Childers. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). But Childers did not respond to defendants' statement of undisputed material facts.[7] Dockets 39, 49. Local

---

[5] Defendants' summary judgment submissions misconstrue, in part, the court's 1915A Screening order. Docket 48 at 3. For example, the screening order provides that Childers's "claims for deliberate indifference to his serious medical needs against Warden Michael Mattson in his individual capacity and his official capacity for injunctive relief and against Medical Roberts, Medical HSA Luther, and Sgt. Albers in their official capacities for injunctive relief survive § 1915A screening." 4:22-CV-04095-CCT, Docket 6 at 16, ¶ 6. But defendants contend that "[c]laims against Mattson in his individual capacity for injunctive and monetary relief related to [Childers's] hernia treatment [survived]." Docket 48 at 3. Defendants' characterization is not correct. The individual capacity claim that survived screening relating to Childers's hernia against Mattson is a claim for monetary damages only.

[6] Childers did not identify any of the unnamed defendants named in his complaint, and his time for doing so has expired. *See* 4:22-CV-04095-CCT, Dockets 11, 14, 15.

[7] Because Childers's complaints are verified, this court will consider any specific, non-conclusory facts alleged in the complaints. *See Roberson v. Hayti Police Dep't*, 241 F.3d 992, 995 (8th Cir. 2001) ("[T]he facts alleged in a verified complaint need not be repeated in a responsive affidavit in order to survive a summary judgment motion."). Childers has also filed various documents to supplement his complaint and his

3

Civil Rule 56.1(D) provides, "All material facts set forth in the movant's statement of material facts will be deemed to be admitted unless controverted by the opposing party's response to the moving party's statement of material facts." D.S.D. Civ. LR 56.1(D). Therefore, the court deems all statements in defendants' statement of undisputed material facts to be admitted. *Beck v. Skon*, 253 F.3d 330, 333 (8th Cir. 2001) (stating that a plaintiff's pro se status does not excuse him from responding to a motion for summary judgment "with specific factual support for his claims to avoid summary judgment[]" (citing Fed. R. Civ. P. 56(e)).

## I.    Deliberate Indifference Toward Serious Medical Needs

### A.    Hernia

While detained at Minnehaha County Jail ("Jail"), Childers suffered a hernia. 4:22-CV-04095-CCT, Docket 1 at 5. He alleges that he repeatedly requested medical attention and that the Jail did not address his medical issues. *Id.*

On September 19, 2021, Childers's intake records note that he noticed a hernia three days prior to his incarceration; however, at the time of intake, he did not complain of any pain, nor did he request any medical treatment. Docket 38 ¶¶ 1-2; Docket 43-1 at 1. On September 21, 2021, Childers was released from the Jail. Docket 38 ¶ 3.

---

numerous miscellaneous requests for relief. *See* 4:22-CV-04095-CCT, Docket 5. Although a district court is not required to "plumb the record in order to find a genuine issue of material fact[,]" *Barge v. Anheuser-Busch, Inc.*, 87 F.3d 256, 260 (8th Cir. 1996), to the extent Childers's submissions are relevant to the pending claims, this court will consider them.

4

Childers's subsequent incarceration occurred from October 30, 2021 to January 27, 2022. *Id.* ¶ 4. Childers did not mention his hernia during his intake screening on October 30, 2021. *Id.* ¶ 5; Docket 43-1 at 2.

On November 19, 2021, Childers reported pain associated with the hernia. Docket 38 ¶ 6; Docket 43-1 at 3. Childers reported that his hernia had not previously been painful, but then he began experiencing discomfort in his left groin area when he rolled over that morning and felt a "pop." Docket 38 ¶ 7; Docket 43-1 at 3. That same day, Childers was taken to Avera Emergency Department for evaluation; the evaluation revealed that Childers had a left inguinal hernia, but it was easily reducible. Docket 38 ¶¶ 8-9; Docket 43-1 at 4-6. Because Childers's hernia was easily reducible, Avera Emergency Department determined that he did not require emergency surgery and could be discharged.[8] Docket 38 ¶ 10. Childers's hernia was monitored and remained easily reducible while he was at the Jail. *Id.* ¶ 15.

On November 20, 2021, Childers submitted a medical request through the electronic system at the Jail, reporting pain, hardness, and changes in color at the site of the hernia. *Id.* ¶ 16; Docket 43-1 at 6. Medical staff assessed Childers and noted some skin irritation, and that the area was slightly firm but not hardened. Docket 38 ¶ 17; Docket 43-1 at 6.

---

[8] Reducible hernias are not life threatening and there is no need for emergency surgery; therefore, surgery can be safely deferred for years. A hernia that is easily reducible can be supported with a hernia belt and monitored to ensure it does not become incarcerated. Docket 38 ¶ 13; Docket 41 ¶ 12; Docket 42 ¶ 12.

On November 21, 2021, Childers sent another request, noting his dissatisfaction about the care he was receiving. Docket 38 ¶ 18. Medical staff advised Childers that the Avera Emergency Department had cleared him to return to the Jail. *Id.* ¶ 19; Docket 43-1 at 6.

On November 23, 2021, medical staff again examined Childers and confirmed that there was no bruising at the site of his hernia; they also provided him with a hernia belt and instructed him to wear it daily. Docket 38 ¶¶ 20-21; Docket 43-1 at 8.

On November 26, 2021, medical staff evaluated Childers again and provided him with pain medication. Docket 38 ¶ 22; Docket 43-1 at 8.

On November 29, 2021, Childers reported that the area where his hernia was located was "turning black." Docket 38 ¶ 23; Docket 43-1 at 8. Medical staff evaluated him and observed that the area was slightly red, but there was no bruising or "black" discoloration. Docket 38 ¶ 24; Docket 43-1 at 8. They also noted that Childers was not wearing his hernia belt as instructed. Docket 38 ¶ 25; Docket 43-1 at 8. Medical staff advised Childers to wear the hernia belt daily and informed him that his condition did not appear to be worsening; Childers acknowledged this advice and was informed that he would be checked the following day. Docket 38 ¶¶ 26-27; Docket 43-1 at 8.

On November 30, 2021, medical staff evaluated Childers again and allowed him an extra blanket to prop under his abdomen while he slept. Docket 38 ¶ 28; Docket 43-1 at 8. His medical records from this date note that his hernia remained easily reducible and that his treatment plan was to wear his

hernia belt daily. Docket 38 ¶ 29; Docket 43-1 at 9. The medical staff also advised Childers that he did not require emergency hernia surgery at that time and that he would receive further medical treatment if complications arose, such as if the hernia became incarcerated. Docket 38 ¶ 30; Docket 43-1 at 9.

Beginning on December 11, 2021, Childers requested medical attention, reporting pain during urination. Docket 38 ¶ 31; Docket 43-1 at 10. Medical staff completed labs on December 14, 2021, and diagnosed Childers with a Urinary Tract Infection (UTI), which explained his reported pain. Docket 38 ¶ 32; Docket 43-1 at 11. On December 15, 2021, medical staff started Childers on medication for the UTI and advised him that the infection was unrelated to his hernia. Docket 38 ¶¶ 33-34; Docket 43-1 at 11.

On December 18, 2021, medical staff assessed Childers again to address his complaints about his hernia and authorized additional pain relievers. Docket 38 ¶¶ 35-36; Docket 43-1 at 10. Medical staff communicated with Childers via the electronic medical system on December 21, 22, 23, 24, 25 and 26 to address his ongoing concerns. Docket 38 ¶ 37; *see also* Docket 43-1 at 12-13.

On December 28, 2021, Childers complained that his hernia was "going up into his penis" and causing complications with urination. Docket 38 ¶ 38; Docket 43-1 at 14. Medical staff advised him that while a hernia can extend into the scrotum, it cannot affect the penis and, therefore, should not impact urination. Docket 38 ¶ 39; Docket 43-1 at 14. Medical staff offered Childers Flomax to assist with urine flow. Docket 38 ¶ 40; Docket 43-1 at 14. It was also

noted that although Childers had been prescribed ibuprofen, he did not take the ibuprofen offered to him the day before, on December 27, 2021. Docket 38 ¶ 41; Docket 43-1 at 15.

On January 1, 2022, medical staff assessed Childers again to check on his hernia. Docket 38 ¶ 43; Docket 43-1 at 15. On January 4, 2022, medical staff prescribed a long-term order for ibuprofen to assist with any pain. Docket 38 ¶ 44; Docket 43-1 at 15.

On January 7, 2022, medical staff reminded Childers that he had been prescribed medication to assist with bowel movements and urination, as well as ibuprofen for pain relief. Docket 38 ¶ 45; Docket 43-1 at 16. Medical staff also reminded Childers to use the hernia belt. Docket 38 ¶ 46; Docket 43-1 at 16.

On January 13, 2022, Childers used the electronic messaging system to report that his "hernia is about gone" but that he was experiencing some stomach pain; medical staff saw Childers the same day. Docket 38 ¶¶ 47-48; Docket 43-1 at 17. Although Childers reported a bulge in his lower left abdomen, medical staff did not detect any bulge upon palpation, and there was no difference in shape or palpation compared to his right lower abdomen. Docket 38 ¶ 49; Docket 43-1 at 17.

On January 14, 2022, during a follow-up assessment, Childers indicated that the medication had helped. Docket 38 ¶ 50; Docket 43-1 at 17. That same day, Childers complained that "his hernia is in his chest." Docket 38 ¶ 51; Docket 43-1 at 17. Medical staff provided him with medication for elevated

blood pressure and anxiety, which he reported "worked very well." Docket 38
¶ 51; Docket 43-1 at 17.

On January 18, 2022, Childers received advice to discontinue ibuprofen
if he continued to experience stomach pains and to use antacid tabs to help
with the discomfort. Docket 38 ¶ 53; Docket 43-1 at 18. The provider also
scheduled an appointment for February 8, 2022, at the Surgical Institute to re-
evaluate Childers's hernia.[9] Docket 38 ¶ 54; Docket 43-1 at 18.

On January 21, 2022, blood work was ordered for Childers. Docket 38
¶ 55; Docket 43-1 at 18. On January 27, 2022, Childers was released from the
Jail. Docket 38 ¶ 56; Docket 43 ¶ 2.

Childers did not complain of pain associated with his hernia on his
subsequent incarcerations at the Jail.[10] Docket 38 ¶ 59. On August 28, 2022,
Childers requested a second blanket, noting that he had previously been issued
one because of his hernia; however, it was determined that he no longer needed
a second blanket for medical reasons. *Id.* ¶¶ 60-61; Docket 43-1 at 19.

**B.    Hepatitis C**

While detained at the Jail, Childers was diagnosed with Hepatitis C.
Docket 1 at 4. Childers claims that Roberts, a member of the Minnehaha
County Jail medical staff, and Michael Mattson, the Minnehaha County Jail

---

[9] Childers was given information about his February 8, 2022 appointment at the
Surgical Institute; however, after his release from jail, Childers missed the scheduled
appointment. Docket 38 ¶¶ 57-58; Docket 43 ¶ 4.

[10] Childers's subsequent incarceration at the Jail occurred from May 24, 2022 through
December 9, 2022. Docket 38 ¶ 63; *also see* Docket 43 ¶ 2 (Childers's incarceration
periods at the Jail).

Warden, told him that he has to wait a year before he can get treatment for Hepatitis C. *Id.* He claims that waiting a year will result in his Hepatitis C becoming chronic and could cause liver damage, cirrhosis, liver cancer, liver failure, need for a liver transplant, and death. *Id.* at 5.

On June 16, 2022, the Jail scheduled Childers for a medical appointment because he requested testing for various conditions, including Hepatitis C. Docket 38 ¶ 64; Docket 43-1 at 20. On June 20, 2022, Avera Health analyzed Childers's lab results and determined that he tested positive for Hepatitis C. Docket 38 ¶ 65; Docket 43-1 at 21.

On June 24, 2022, Nurse Practitioner Nelinda Rhode, who is employed with Correctional Medical Management, LLC (CMM), met with Childers and informed him of his positive lab diagnosis. Docket 38 ¶ 66; Docket 41; Docket 43-1 at 5. Rhode also educated Childers on Hepatitis C, including its transmission, symptoms, treatment options, and prevention methods. Docket 38 ¶ 67; Docket 43-1 at 5. Childers's medical records note that he was unaware of the mode of transmission, but Rhode identified risk factors such as alcohol use and a history of intravenous drug use. Docket 38 ¶ 68; Docket 43-1 at 5. After reviewing Childers's medical records, the decision was made to continue monitoring his liver enzymes without providing drug therapy. Docket 38 ¶ 69. This decision was based on two main factors: (1) Childers's liver enzymes were within the normal range, indicating no need for drug therapy;

and (2) his recent history of drug and alcohol use prior to incarceration.[11] *Id.* ¶¶ 70-71; Docket 43-1 at 22. Initiating drug therapy for Hepatitis C in a patient who has not been substance-free could lead to liver damage and increase the risk of medical complications. Docket 38 ¶ 75.

Childers was scheduled for a six-month follow-up appointment on December 24, 2022, to re-test his liver enzymes; however, the Jail released Childers before this follow-up appointment. *Id.* ¶¶ 76-77.

Of note, CMM has guidelines suggesting a patient be incarcerated for a year before beginning treatment for Hepatitis C, but this is not a strict rule. *Id.* ¶ 78. The guidelines also recommend that the patient anticipate at least six additional months of incarceration (to complete the treatment), successfully participate in an alcohol or drug treatment program, and have no clinical contraindications to treatment. *Id.* ¶ 79. While CMM's guidelines offer some direction, the individual providers at the Jail make the final treatment decisions based on their professional medical judgment. *Id.* ¶ 80. Providers determine Hepatitis C treatment, including the use of drug therapy, on a case-by-case basis, taking into account various factors such as the patient's medical history and prior drug or alcohol use. *Id.* ¶ 81.

---

[11] Providers at the Jail had access to Childers's treatment notes from the Avera Addiction Care Center. The notes indicated that on March 16, 2022, Childers was unsuccessfully discharged from the Intensive Methamphetamine Treatment program. Docket 38 ¶ 73. His discharge diagnosis included the following conditions: (a) Severe Methamphetamine Use Disorder; (b) Severe Alcohol Use Disorder; (c) Opioid Use Disorder; (d) Severe Cannabis Use Disorder; (e) Severe Cocaine Use Disorder; and (f) Severe Nicotine Use Disorder. *Id.* ¶ 74.

## II.    Excessive Force Claims

Childers's complaint alleges that, at the time of his arrest, officers directed him to lie down; in an effort to comply, he knelt and placed his hands behind his head. *See* Docket 1 at 4. He claims that one officer drove his knee into his back, forcing him into the pavement. *Id.* He also claims that the other officer then put a knee or foot on the side of his face. *Id.* Childers alleges that the two officers both put their full weight on him while he was on the ground. *Id.* He alleges that one officer told him to stop resisting, at which point he was handcuffed. *Id.* He claims that he was not threatening the officers or attempting to flee. *Id.* Childers states that he suffered a hernia and a torn rotator cuff[12] as a result of the officers' actions. *Id.*

### DISCUSSION

## I.    Summary Judgment Standard

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party can meet this burden by presenting evidence that there is no genuine dispute as to any material fact or by showing that the nonmoving party has not presented evidence to support an element of its case on which it bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To avoid summary judgment, a nonmoving party may not rely solely on the allegations in the complaint but must substantiate his allegations with sufficient probative

---

[12] Childers refers to a "torn rotator cup" in his complaint.

12

evidence. *Wilson v. Miller*, 821 F.3d 963, 970 (8th Cir. 2016). A party opposing a properly made and supported motion for summary judgment must cite to particular materials in the record supporting the assertion that a fact is genuinely disputed. Fed. R. Civ. P. 56(c)(1); *Gacek v. Owens & Minor Distrib., Inc.*, 666 F.3d 1142, 1145 (8th Cir. 2012). "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." *Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007).

Prisoners who proceed pro se are entitled to the benefit of liberal construction at the pleading stage. *Quam v. Minnehaha Cnty. Jail*, 821 F.2d 522, 522 (8th Cir. 1987) (per curiam). Nonetheless, the summary judgment standard set forth in Rule 56 of the Federal Rules of Civil Procedure remains applicable to prisoners proceeding pro se. *Id.* The district court is not required to "plumb the record in order to find a genuine issue of material fact." *Barge v. Anheuser-Busch, Inc.*, 87 F.3d 256, 260 (8th Cir. 1996). Courts must remain sensitive, however, "to the special problems faced by prisoners attempting to proceed pro se in vindicating their constitutional rights, and [the Eighth Circuit does] not approve summary dismissal of such pro se claims without regard for these special problems." *Nickens v. White*, 622 F.2d 967, 971 (8th Cir. 1980). "[W]hen dealing with summary judgment procedures technical rigor is inappropriate where unresponsive and uninformed prisoners are involved." *Ross v. Franzen*, 777 F.2d 1216, 1219 (7th Cir. 1985).

## II.    Official Capacity Claims for Injunctive Relief

Childers's complaints seek various forms of injunctive relief. *See generally* Docket 1; 4:22-CV-04095-CCT, Docket 1. Childers has been released on parole. *See Offender Locator*, S.D. Dep't of Corr., https://doc.sd.gov/adult/lookup/ (last visited Oct. 28, 2024). Because Childers is no longer detained at the Jail and subject to the conditions that give rise to his claims for injunctive relief, defendants contend that Childers's claims for injunctive relief are moot and should be dismissed. Docket 39 at 20; Docket 48 at 14-16.

"[A] prisoner's claim for injunctive relief to improve prison conditions is moot if he or she is no longer subject to those conditions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (citing *Wycoff v. Brewer*, 572 F.2d 1260, 1262 (8th Cir. 1978)). This remains true even if the prisoner argues he might, at some future time, be incarcerated at the same prison.[13] *Smith v. Hundley*, 190 F.3d 852, 855 (8th Cir. 1999). Because Childers is no longer an inmate at the Jail, his claims for injunctive relief are moot and must be dismissed.[14] *See Beaulieu v. Ludeman*, 690 F.3d 1017, 1024 (8th Cir. 2012) (holding that the plaintiffs' claims were moot because plaintiffs transferred out of the jail that allegedly violated their constitutional rights); *Zajrael v. Harmon*, 677 F.3d 353,

---

[13] Childers has not argued this point.

[14] Within his pleadings, Childers also requests the legalization of recreational and medical marijuana. 4:22-CV-04095-CCT, Docket 1 at 7. "In general, wisdom, fairness, and policy of statutes are the business of the legislature, not the courts." *Reeder v. Kansas City Bd. of Police Comm'rs*, 796 F.2d 1050, 1055 (8th Cir. 1986).

355 (8th Cir. 2012) (holding that the plaintiff's request for injunctive relief concerning the facility's policies or practices was moot, as the plaintiff was no longer housed at the facility); *Gladson v. Iowa Dep't. of Corr.*, 551 F.3d 825, 835 (8th Cir. 2009) (holding that the plaintiff's claims were rendered moot when he was no longer incarcerated).

Even if the court were to construe these claims as not moot, they would, nonetheless, fail due to the absence of a genuine dispute regarding any material fact. It is undisputed that defendants provided treatment to Childers for both his hernia and Hepatitis C. *See supra* at 4-12. Therefore, the essence of Childers's complaint is the denial of his preferred treatment rather than deliberate indifference to a serious medical need. *See Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) ("The prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." (quoting *Est. of Rosenberg v. Crandell,* 56 F.3d 35, 37 (8th Cir. 1995)). Accordingly, Childers's "mere allegations, unsupported by specific facts or evidence beyond [Childers's own] conclusions, are insufficient to withstand [defendants'] motion for summary judgment." *Thomas,* 483 F.3d at 527. While the court sympathizes with prisoners who proceed pro se, it cannot disregard the standard set forth in Rule 56 of the Federal Rules of Civil Procedure due to their pro se status. *Quam,* 821 F.2d at 522. Therefore, Mattson, Roberts, Luther, and Albers are entitled to summary judgment on the official capacity claims against them for injunctive relief.

15

### III. Fourth Amendment Excessive Force Claims

Childers brings excessive force claims against Unknown PD Officers SFPD #1 and #2. On April 3, 2023, the court filed a Notice of Rule 4(m) regarding Childers's failure to serve Unknown PD Officers SFPD #1 and #2. 4:22-CV-04095-CCT, Docket 11. The court warned Childers that if Unknown PD Officers SFPD #1 and #2 were not served by May 3, 2023, this action would be dismissed as to those two defendants without prejudice. Rule 4(m) states that "[i]f a defendant is not served within 90 days after the complaint is filed, the court . . . must dismiss the action without prejudice against the defendant[.]" Fed. R. Civ. P. 4(m). It has been well over 90 days since this court directed service of Unknown PD Officers SFPD #1 and #2. Childers was on notice of the court's intention to dismiss the claims against these defendants; however, he did not serve SFPD #1 within the timeframe set by the court, and he has never served SFPD #2. Accordingly, Childers's individual and official capacity claims against Unknown PD Officers SFPD #1 and #2 are dismissed without prejudice.

### IV. Deliberate Indifference to Serious Medical Needs Claims

#### A. Legal Standard

Childers's claims of inadequate medical care are analyzed under the Fourteenth Amendment's due process protections, rather than the Eighth Amendment. *See Davis v. Hall*, 992 F.2d 151, 152-53 (8th Cir. 1993) (per curiam). But because the Eighth Circuit Court of Appeals has not established a different standard for this analysis, these claims are examined under the same

deliberate indifference standard as Eighth Amendment claims by convicted inmates. *Id.*

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104-05 (footnotes omitted). "This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. "[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. Allegations of negligence will not suffice, nor will mere disagreement with treatment decisions. *See Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) ("The prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decision does not rise to the level of a constitutional violation." (quoting *Est. of Rosenberg*, 56 F.3d at 37)). "Grossly incompetent or inadequate care can constitute deliberate indifference, as can a doctor's decision to take an easier and less efficacious course of treatment." *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990) (citation omitted). A plaintiff must show that the defendant's

17

mental state was "akin to criminal recklessness." *McCaster v. Clausen*, 684 F.3d 740, 746 (8th Cir. 2012) (quotation omitted).

This standard includes both an objective and subjective component. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)). The plaintiff "must demonstrate (1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." *Id.* (citing *Coleman*, 114 F.3d at 784). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman*, 114 F.3d at 784 (citation and internal quotation marks omitted). "[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996). Provided this threshold is not crossed, inmates do not have a constitutional right to a specific or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment. *Id.* To be liable, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [he or she] must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

### B.    Official Capacity Claims for Money Damages

Childers's claims against each identified defendant in their official capacities are construed as claims against Minnehaha County. *See Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) ("A suit against a public official in [his or her] official capacity is actually a suit against the entity for which the official is an agent." (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). Minnehaha County cannot be "sued under § 1983 for an injury inflicted solely by its employees or agents' on a theory of respondent superior." *Andrews v. Fowler*, 98 F.3d 1069, 1074 (8th Cir. 1996) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Accordingly, a governmental entity is liable under § 1983 "only when the entity itself is a 'moving force' behind the violation. That is, the entity's official 'policy or custom' must have 'caused' the constitutional violation . . ." *Clay v. Conlee*, 815 F.2d 1164, 1170 (8th Cir. 1987). "[I]t is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694 (1978).

Additionally, to establish governmental liability premised on an unofficial custom rather than an official policy, a plaintiff must come forward with record evidence to support a finding of "a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees[,]" "deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct[,]" and "that plaintiff was injured by acts pursuant to the

19

governmental entities custom, i.e., that the custom was a moving force behind the constitutional violation." *Brewington v. Keener*, 902 F.3d 796, 801 (8th Cir. 2018) (quoting *Corwin v. City of Independence*, 829 F.3d 695, 700 (8th Cir. 2016)). "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985).

Childers's claims related to his Hepatitis C treatment against Rhode, Roberts, and Mattson seek both injunctive relief and monetary damages against these defendants in their official capacities. Because Childers's claims for injunctive relief are moot, only his claims for monetary damages remain. Childers alleges that defendants would not treat his Hepatitis C because he did not meet the "one-year' requirement pursuant to the Jail's policy. Docket 1 at 4; Docket 1-1 at 3.

It is undisputed that the CMM guidelines suggest a patient should be incarcerated for a year before beginning treatment for Hepatitis C, as Childers alleges; however, it is also undisputed that these guidelines are intended to provide guidance to providers, while the ultimate determination regarding treatment rests with the professional medical judgment of the individual providers at the Jail. Docket 38 ¶¶ 78-80. Furthermore, the record reveals that although Childers did not receive drug therapy for his Hepatitis C, he did receive treatment through testing to monitor his enzyme levels. *Id.* ¶ 69. The

decision to continue monitoring Childers's liver enzymes instead of providing him with drug therapy was not based on the CMM guidelines; rather it was due to two overarching factors: (1) Childers's liver enzymes were within a normal range—indicating he did not need drug therapy; and (2) Childers had a recent history of drug and alcohol use prior to his incarceration, including an unsuccessful discharge from the Intensive Methamphetamine Treatment program. *Id.* ¶¶ 70-71, 73. Childers fails to provide evidence to establish even medical negligence, much less deliberate indifference. Therefore, Childers was not denied medical treatment; rather, he was denied his preferred treatment. *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010).

Even assuming, arguendo, that defendants are required to strictly adhere to the CMM guidelines, the Eighth Circuit has upheld the use of similar Hepatitis C treatment protocols. *See Hines v. Anderson*, 547 F.3d 915, 918, 921 (8th Cir. 2008) (holding that officials were not deliberately indifferent by failing to provide drug therapy to an inmate with Hepatitis C who did not have advanced liver as required by the Minnesota Department of Corrections treatment protocol); *see also Carlson v. Weber*, No. Civ 08-4101-KES, 2010 WL 3701359, at *6 (D.S.D. Sept. 14, 2010) ("[D]efendants' treatment of [plaintiff's] Hepatitis C through monitoring, but not drug therapy, was not deliberately indifferent to [plaintiff's] medical needs."); *Pennington v. Kelley*, No. 5:08CV0018, 2009 WL 3010912, at *3-4 (E.D. Ark. Sept. 16, 2009) (holding there was no deliberate indifference to medical needs where defendant delayed inmate's drug therapy until inmate's liver functions declined).

21

Thus, defendants Mattson, Roberts, and Rhodes are entitled to summary judgment on the official capacity claims against them for monetary damages.

### C. Individual Capacity Claims for Money Damages

#### 1. Claims Against Mattson

Childers alleges that Mattson was deliberately indifferent to his serious medical needs by denying him hernia surgery. 4:22-CV-04095-CCT, Docket 1 at 5. Childers seeks monetary damages against Mattson in his individual capacity. Mattson moves for summary judgment based on qualified immunity. Docket 48 at 8-14.

Qualified immunity "shields a government official from liability in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." *Partlow v. Stadler*, 774 F.3d 497, 501 (8th Cir. 2014) (citation omitted). "To overcome a defense of qualified immunity, a plaintiff must show: (1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." *McRaven v. Sanders*, 577 F.3d 974, 980 (8th Cir. 2009) (quoting *Howard v. Kansas City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009)). The court may consider the elements in any order, and if either of the elements is not met, then the official is entitled to qualified immunity. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

"A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that

22

right." *Mullenix v. Luna*, 577 U.S. 7, 11-12 (2015) (per curiam) (citation and internal quotation marks omitted). There need not be "a case directly on point for a right to be clearly established," but "existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (citation and internal quotation marks omitted). The Supreme Court has "repeatedly told courts. . . not to define clearly established law at a high level of generality." *Id.* (citation and internal quotation marks omitted). "The plaintiffs have the burden of showing that the law was clearly established." *Est. of Walker v. Wallace*, 881 F.3d 1056, 1060 (8th Cir. 2018) (citation omitted).

Mattson argues that Childers's "hernia was not an objectively serious medical need because it was diagnosed as not requiring surgical intervention." Docket 48 at 9. In support of his position, Mattson cites *Hancock v. Arnott*, 39 F.4th 482 (8th Cir. 2022). In *Hancock*, the Eighth Circuit held that the plaintiff must "present evidence to support the serious medical needs he pleaded" to avoid summary judgment. *Id.* at 486. While the defendants provided evidence showing that the plaintiff's hernia was reducible and did not require surgical intervention, the plaintiff failed to introduce any medical or expert evidence that any delay in his hernia repair surgery posed any excessive risk or harm. *Id.* at 487. The Eighth Circuit concluded that "[w]ithout corroborating evidence of symptoms, however, self-reported assertions of pain are insufficient[,]" ruling that the plaintiff did not establish a detrimental effect from the delay in treatment and, therefore, did not establish a serious medical need. *Id.*

Like *Hancock*, Childers has not submitted any medical or expert evidence showing that any delay in his hernia repair surgery created any excessive risk or harm. Childers essentially argues that his own claims of pain and suffering serve as the verifying medical evidence needed to show harm from the delay. *See* 4:22-CV-04095-CCT, Docket 1 at 5. It is undisputed that medical staff saw Childers on numerous occasions and consistently addressed each of his complaints. Furthermore, the medical staff informed Childers that he did not require emergency hernia surgery at that time and that he would receive further medical treatment if complications arose, such as if the hernia became incarcerated. Docket 38 ¶¶ 29, 30; Docket 43-1 at 9.

Mattson further argues that even if Childers's hernia was to be construed as a serious medical need, he was not deliberately indifferent to Childers's needs. Docket 48 at 10. The screening order noted that "[w]hile Mattson would not be held liable for deferring to a medical provider's opinion, he can be deliberately indifferent if he denied Childers the opportunity to see a medical provider[.]" 4:22-CV-04095-CCT, Docket 6 at 15. Accordingly, the issue is whether Mattson denied Childers access to medical providers.

Regarding a non-medical defendant, a plaintiff "must allege and show that the supervisor personally participated in or had direct responsibility for the alleged violations" or "that the supervisor actually knew of, and was deliberately indifferent to or tacitly authorized, the unconstitutional acts." *Saylor v. Nebraska*, 812 F.3d 637, 644 (8th Cir. 2016). Additionally, "[p]rison officials lacking medical expertise are entitled to rely on the opinions of medical

24

staff regarding inmate diagnosis and the decision of whether to refer the inmate to outside doctors or dentists." *Holden v. Hirner*, 663 F.3d 336, 343 (8th Cir. 2011).

The record demonstrates that Mattson consistently responded to Childers's messages and consulted with the medical staff to investigate Childers's complaint. *See* Docket 49 at ¶¶ 65-66. Additionally, Mattson encouraged Childers to utilize the Jail's medical staff and to follow their treatment plan. *Id.* ¶ 68. Childers has not produced any evidence to support his allegation. There is no record of Mattson preventing Childers from seeing the providers; nor is there any indication that Mattson interfered with Childers's hernia treatment. Thus, Childers has failed to demonstrate a violation of his constitutional rights, as required to overcome the defendant's defense of qualified immunity. *See Dulany*, 132 F.3d at 1239 ("[I]nmates have no constitutional right to receive a particular or requested course of treatment and prison doctors remain free to exercise their independent medical judgment."). Accordingly, Mattson is entitled to summary judgment based on qualified immunity on Childers's claims against him in his individual capacity for money damages.

### 2.    Claims Against Roberts

Childers alleges that Roberts was aware of his serious medical needs and was deliberately indifferent in failing to treat his Hepatitis C with drug therapy due to the Jail's policy against providing treatment to inmates who have not

been incarcerated for a year. Docket 1 at 4. Childers seeks monetary damages against Roberts in her individual capacity.

Although Childers did not receive drug therapy for his Hepatitis C, the record shows that his condition was continually managed through regular monitoring of his enzyme levels. Docket 38 ¶ 69. The decision to monitor Childers's enzyme levels without providing drug therapy was based on two overarching factors: (1) Childers's enzyme levels were within a normal range, indicating he did not need drug therapy; and (2) Childers had a recent history of drug and alcohol use prior to his incarceration, including an unsuccessful discharge from the Intensive Methamphetamine Treatment program. *Id.* ¶¶ 70-71, 73. Therefore, as discussed above, what Childers perceived as a refusal to treat his Hepatitis C was actually a disagreement with the chosen course of treatment. *Dulany*, 132 F.3d at 1239.

Several courts have specifically addressed the treatment of inmates with Hepatitis C, including this court. This court, in line with other jurisdictions, has held that failing to treat an inmate's Hepatitis C with drug therapy does not constitute deliberate indifference. *See Carlson*, 2010 WL 3701359, at *6 ("[D]efendants' treatment of [plaintiff's] Hepatitis C through monitoring, but not drug therapy, was not deliberately indifferent to [plaintiff's] medical needs."); *Pennington*, 2009 WL 3010912, at *3-4 (holding there was no deliberate indifference to medical needs where defendant delayed inmate's drug therapy until inmate's liver functions declined); *Floyd v. Chief Med. Dir. of UTMB*, 210 Fed. App'x 387, 388-89 (5th Cir. 2000) (per curiam) (holding prison officials

were not deliberately indifferent to inmate's serious medical needs when they refused to treat his Hepatitis C with drug therapy); *Troutt v. Corr. Healthcare Mgmt., Inc.*, No. CIV-04-1750-C, 2006 WL 2372987 (W.D. Okla. Aug. 14, 2006) (holding that a conservative course of treatment, which included monitoring but not drug therapy, did not amount to deliberate indifference). Accordingly, Roberts's treatment of Childers's Hepatitis C through monitoring, rather than drug therapy, did not amount to deliberate indifference to Childers's medical need. *See Langford*, 614 F.3d at 460 ("To state a claim based on inadequate medical treatment the plaintiff must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of constitutional violation." (citation and internal quotation omitted)). Thus, Roberts is entitled to summary judgment on Childers's claim against her in her individual capacity for money damages related to Childers's claims of deliberate indifference to his Hepatitis C complaint.

Thus, it is ORDERED:

1. That Childers's claims against Unknown PD Officers SFPD #1 and #2 are dismissed without prejudice.

2. That defendants' motions for summary judgment (Dockets 37, 47) are granted.

DATED this 30th day of October, 2024.

BY THE COURT:

CAMELA C. THEELER
United States District Judge

27